IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MATTHEW W. ALLISON, )
)
Plaintiff, )
)
v. ) Case No. CIV-07-396-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**OPINION AND ORDER**

Plaintiff Matthew W. Allison (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further consideration.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 29, 1973 and was 33 years old at the time of the ALJ's decision. Claimant obtained an associates degree. Claimant previously worked as a truck driver. Claimant alleges an inability to work beginning May 4, 2005 due to limitations caused by the contraction of Rocky Mountain Spotted Fever, encephalitis, deep vein thrombosis, multiple decubitus ulcers, pneumonia, peripheral neuropathy, Type II diabetes

3

mellitus, and morbid obesity.

**Procedural History**

On June 14, 2005, Claimant protectively filed for disability benefits under Title II (42 U.S.C. § 401, et seq.) and for supplemental security income under Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. Claimant's application for benefits was denied initially and upon reconsideration. On October 19, 2006, Claimant appeared at a hearing before ALJ Ralph L. Wampler in Ardmore, Oklahoma. On March 5, 2007, the ALJ issued an unfavorable decision, finding Claimant was not disabled during the relevant period. On September 14, 2007, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that while Claimant suffered from severe impairments, they did not meet a listing and Claimant retained the residual functional capacity to perform sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly develop the record; (2) making findings at step five which are not supported by substantial evidence; and (3) engaging in a

4

faulty credibility determination.

**Development of the Record**

Claimant first contends the ALJ failed to develop the record by not ordering a consultative mental evaluation. Claimant first presented to Mimbres Memorial Hospital in Deming, New Mexico on May 4, 2005, complaining of bloody vomiting and stools for the previous four days with abdominal pain and a rash for a week. (Tr. 211). Claimant was also incoherent and unable to follow commands together with other physical problems. (Tr. 211, 215). Claimant was diagnosed with septic shock, upper gastrointestinal bleeding, and early disseminated intravascular coagulation. (Tr. 212).

Claimant was transferred to Memorial Medical Center in Las Cruces, New Mexico. He exhibited mild cardiomegaly, ill-defined infiltrate in both lungs, and cholelithiasis. He was fitted with a central and arterial lines. Claimant was diagnosed with sepsis syndrome of unknown source but possibly aspiration pneumonia and a petechial maculopapular rash possibly in response to drugs. (Tr. 203-208).

On May 7, 2005, Claimant was transferred to University Hospital in Albuquerque, New Mexico as his condition worsened. Claimant continued to be very lethargic and non-responsive to verbal stimuli except for slight movement in his extremities, rapid breathing and a fever of between 101 and 103 degrees. The rash was

again noted over most of Claimant's body. Claimant was diagnosed with likely bacteria-related septic shock with unknown reason, diabetes, and morbid obesity status post gastroplasty. (Tr. 185-186).

At University Hospital, Claimant was observed to have a rash on his extremities, a weight of 438 pounds, and an oxygen saturation of 93 percent while intubated with mild right rhonchi. (Tr. 173). Claimant also had cholelithiasis and rare bacteria, discoloration, and blood in his urine. His rash was suspicious for Rocky Mountain Spotted Fever and an antibiotic was administered. (Tr. 173-174).

Laboratory testing was positive for Rocky Mountain Spotted Fever. (Tr. 181). Claimant continued with fever despite treatment, decubitus ulcers, right internal jugular thrombosis, and diabetes. (Tr. 176-177).

A CT scan and lumbar puncture were not possible due to Claimant's size. However, he remained unresponsive until day five of receiving medication. By day eight, he was alert and did not exhibit any motor or sensory deficits. Claimant remained on a ventilator for seven days and extubated for eight days. (Tr. 177-178).

On May 22, 2005, Claimant underwent an EEG which revealed mild diffuse slowing of background activity. The abnormal testing

6

revealed no definite ictal or epileptiform as well as focal or lateralizing features. No activation of discharges by photic stimulation and sleep were noted. The diffuse mild slowing of background activity implied a mild diffuse cerebral dysfunction due to an encephalopathy with non-specific etiology. (Tr. 272).

On May 28, 2005, Claimant was transferred to Mercy Memorial Health Center in Ardmore, Oklahoma. Upon his discharge, Claimant was noted to have encephalitis with Rocky Mountain Spotted Fever, multiple deep vein thromboses, pneumonia, decubitus ulcers, diabetes mellitus, hypertension, and deconditioning due to his hospitalization. (Tr. 265-266).

Upon arrival at the facility in Ardmore, Claimant was diagnosed with status post Rocky Mountain Spotted Fever with encephalitis and mobility and activity daily living dysfunction, morbid obesity, multiple decubitus ulcers, and diabetes. Goals were set for ambulation of 10 to 15 feet with inpatient physical and occupational therapies during a three week stay. (Tr. 170-171).

Claimant continued to exhibit lower extremity weakness and developed infection in his ulcers. (Tr. 162-165). By June 7, 2005, Claimant's rash had faded and he could stand and take two steps. (Tr. 153-155).

Claimant continued to improve through his discharge from the

facility. He continued to receive treatment for his ulcers through November of 2005. (Tr. 145, 234-247).

On October 3, 2005, Claimant underwent a consultative physical examination by Dr. Dennis R. Whitehouse. Dr. Whitehouse found Claimant could not feel his feet and continued to suffer from sores. He was not currently seeing a neurologist. His height was measured at 6'1.5" and his weight at 350 pounds. He was found to be alert, oriented without acute distress. He thought slowly, but answered appropriately through all of his questions. He remembered dates well. (Tr. 248).

At the administrative hearing, Claimant's attorney suggested mental testing might be prudent to determine whether Claimant suffered from any organic brain damage due to the prolonged period without treatment for encephalitis. (Tr. 294). Claimant reported having trouble "making sense of a lot of stuff" and has trouble understanding what he reads. (Tr. 303-304). He has not tried to write. (Tr. 304). He reported to the ALJ that he could not understand things as he could before his illness. He has to have people repeat themselves on the telephone and generally turns telephone calls over to his mother because Claimant has difficulty understanding what the caller is saying. (Tr. 307-308).

Claimant contends the evidence should have alerted the ALJ to the need for further consultative mental testing. Generally, the

8

burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

Further, in regard to consultative examinations, it is well-established that "the Secretary has broad latitude in ordering consultative examinations." Diaz v. Secretary of Health & Human Services, 898 F.2d 774, 778 (10th Cir. 1990). However, consultative examinations are required when there is a direct

conflict in the medical evidence requiring resolution or where the medical evidence in the record is inconclusive. *See*, 20 C.F.R. § 404.1519a(b)(4); Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993). An examination may also be necessary "where additional tests are required to explain a diagnosis already contained in the record." Hawkins v. Chater, 113 F.3d 1161, 1166 (10th Cir. 1997).

The status of Claimant's mental condition is in flux and somewhat unresolved. Claimant's counsel suggested on multiple occasions that further consultative testing might be necessary to determine the effects of Claimant's prolonged failure to receive treatment for the encephalitis resulting from Rocky Mountain Spotted Fever. Indeed, in the discharge from the New Mexico hospital, it is suggested those long-term effects were unknown but entirely possible. (Tr. 266). Given Claimant's testimony, prior medical evidence, and the inconclusive nature of the findings, this Court concludes a consultative mental health examination should have been ordered. On remand, the ALJ shall obtain such medical testing and determine whether Claimant's mental status has been permanently affected by his physical condition.

### Step Five Findings

Claimant also challenges the ALJ's conclusion that Claimant could perform the jobs of courier and rental driver. The ALJ concluded Claimant could perform sedentary work. However, the

vocational expert testified the jobs of courier and rental driver entailed light work. (Tr. 19, 309). It appears this discrepancy constitutes error. On remand, the ALJ shall re-evaluate Claimant's RFC in light of the vocational testimony.

### Credibility Determination

The ALJ concluded Claimant's testimony was not entirely credible. (Tr. 18). However, he did not link the testimony with the medical evidence but rather made conclusory statements rejecting Claimant's credibility. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures

11

other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. On remand, the ALJ shall make the appropriate linkage between Claimant's statements of disabling pain and comprehension difficulties, after obtaining the consultative mental testing directed herein.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

IT IS SO ORDERED this 24th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE